1  Tanya E. Moore, SBN 206683
   MOORE LAW FIRM, P.C.
2  300 South First Street Ste. 342
   San Jose, California 95113
3  Telephone (408) 298-2000
   Facsimile (408) 298-6046
4  E-mail: service@moorelawfirm.com
           tanya@moorelawfirm.com
5
   Attorney for Plaintiff
6  Darren Gilbert

7

8              **UNITED STATES DISTRICT COURT**

9             **EASTERN DISTRICT OF CALIFORNIA**

10                    **(Fresno Division)**

11

12  DARREN GILBERT,                  )  No. 1:22-cv-01008-DAD-SAB
                                     )
13          Plaintiff,               )  **SECOND AMENDED COMPLAINT**
                                     )  **ASSERTING DENIAL OF RIGHT OF**
14      vs.                          )  **ACCESS UNDER THE AMERICANS**
                                     )  **WITH DISABILITIES ACT FOR**
15  BOOKIES, INC.; NORTHWOOD         )  **INJUNCTIVE RELIEF, DECLARATORY**
    ASSOCIATES, LLC;                 )  **RELIEF, DAMAGES, ATTORNEYS'**
16                                   )  **FEES AND COSTS (ADA**
                                     )
17          Defendants.              )
                                     )
18                                   )
                                     )
19  _____)

20                     **I. SUMMARY**

21      1.      This is a civil rights action by plaintiff DARREN GILBERT ("Plaintiff") for

22  discrimination at the building, structure, facility, complex, property, land, development, and/or

23  surrounding business complex known as:

24          Bookies
            2020 Standiford Ave., #J-8
25          Modesto, California 95350
            (hereafter "the Facility")
26

27      2.      Plaintiff seeks damages, injunctive and declaratory relief, attorney fees and

28  costs, against BOOKIES, INC. and NORTHWOOD ASSOCIATES, LLC (hereinafter

collectively referred to as "Defendants"), pursuant to Title III of the Americans with Disabilities Act of 1990 (42 U.S.C. §§ 12101 et seq.) ("ADA") and related California statutes.

## II.   JURISDICTION

3.      This Court has original jurisdiction under 28 U.S.C. §§ 1331 and 1343 for ADA claims.

4.      Supplemental jurisdiction for claims brought under parallel California law – arising from the same nucleus of operative facts – is predicated on 28 U.S.C. § 1367.

5.      Plaintiff's claims are authorized by 28 U.S.C. §§ 2201 and 2202.

## III.   VENUE

6.      All actions complained of herein take place within the jurisdiction of the United States District Court, Eastern District of California, and venue is invoked pursuant to 28 U.S.C. § 1391(b), (c).

## IV.   PARTIES

7.      Defendants own, operate, and/or lease the Facility, and consist of a person (or persons), firm, and/or corporation.

8.      Plaintiff is substantially limited in his ability to walk, and must use a wheelchair, knee scooter, or prosthetic for mobility. Consequently, Plaintiff is "physically disabled," as defined by all applicable California and United States laws, and a member of the public whose rights are protected by these laws.

## V.   FACTS

9.      The Facility is open to the public, intended for non-residential use, and its operation affects commerce. The Facility is therefore a public accommodation as defined by applicable state and federal laws.

10.      Plaintiff lives less than five miles from the Facility and visited the Facility on or about February 25, 2022 to have lunch. During his visit to the Facility, Plaintiff personally encountered barriers (both physical and intangible) that interfered with, if not outright denied, Plaintiff's ability to use and enjoy the goods, services, privileges and accommodations offered at the Facility. These barriers include, but are not necessarily limited to, the following:

a)     The curb ramp serving the designated accessible parking access aisle was excessively sloped in the direction of travel and the side flares, and it was improperly configured, projecting out into the access aisle. It was difficult for Plaintiff to ascend the ramp using his prosthetic leg due to the excessive slopes. Plaintiff is aware that if he returns to the Facility using his wheelchair, the excessive slopes within the access aisle created by the curb ramp will cause him difficulty in unloading from his vehicle.

b)     Plaintiff could not find any accessible tables at the Facility. The tables were all either too high or lacked sufficient knee and toe clearances. Because it was difficult for Plaintiff to sit at a high table using his prosthetic leg, he had to sit at the bar instead. Plaintiff is aware that if he returns to the Facility using his wheelchair, none of the tables will be accessible to him.

c)     The routes of travel through the dining areas lacked sufficient clear width, and were obstructed by seated diners and furniture. It was difficult for Plaintiff to make his way to and from the restroom due to the narrow route, and he is aware that it would be even more difficult using his wheelchair.

11.    It is Plaintiff's intention to have all barriers which exist at the Facility and relate to his disabilities removed to afford him full and equal access. Specifically, Plaintiff seeks the removal of the following barriers which he has personal knowledge of, which relate to his disabilities, and which exist at the Facility:

a)     There is no properly configured accessible route(s) from the site arrival points, including public sidewalk and designated accessible parking, to the Facility entrance.

a.    The route from the public sidewalk contains excessive cross slopes and changes in level, and a curb ramp that has excessive cross slopes, side flare slopes, and change in level.

*Gilbert v. Bookies, Inc., et al.*
Second Amended Complaint

b. The route from the designated accessible parking closest to the Facility entrance includes an improperly configured built-up curb ramp which is excessively sloped in the direction of travel and on the side flares, has excessive changes in level and lacks a non-slip surface, and projects into the designated accessible parking stall and access aisle, creating excessive slopes there.

c. The route from the designated accessible parking to the east of the Facility contains a curb ramp with excessively sloped top landing, excessive slope in the direction of travel and on the side flares, excessive cross slope, and excessive change in level at the lower transition.

d. These are barriers to Plaintiff because, due to his disability, it is difficult for him to traverse uneven and sloped surfaces whether he is using his wheelchair or his prosthetic. It is difficult for him to use unevenly sloped curb ramps, especially those with excessive cross slope and side flares, as it is hard to maintain his balance when walking with his prosthetic, and when using his wheelchair, it veers to the side.

b)  Proper tow-away signage is not provided at each driveway entrance or visible from each designated accessible parking stall. This is a barrier to Plaintiff as without the risk of their vehicles being towed, able-bodied patrons are more likely to park in or obstructing the designated accessible parking which would leave it unavailable for Plaintiff, who has difficulty travelling long distances due to his disability and needs a parking space as close as possible to the entrance.

c)  Proper accessible parking is not provided. None of the designated accessible parking is properly configured and identified as van-accessible, while the designated accessible parking stalls and/or access

1    aisles lack the proper dimensions, contain excessive slopes and changes

2    in level, and lack proper signage and pavement markings. This is a

3    barrier to Plaintiff because, due to his disability, he requires a properly

4    configured van-accessible parking stall and adjacent access aisle with

5    level surfaces in order to use his wheelchair ramp to unload his

6    wheelchair from his van.

7    d)    The Facility lacks a properly configured accessible entrance. The

8    exterior maneuvering clearances at the main entrance contain excessive

9    slopes and changes in level, which make it difficult for Plaintiff to

10    approach the door to open it. Additionally, the door closing speed is not

11    properly adjusted and maintained, causing one of the doors to close too

12    quickly, while neither leaf of the doors is identified as accessible. It is

13    difficult for Plaintiff to maneuver through doors that close too quickly

14    whether he is using his wheelchair or his prosthetic.

15    e)    The exterior door serving the patio area is not accessible. The door

16    closing speed is not properly adjusted and maintained, so the door closes

17    too quickly which, again, is a barrier to Plaintiff due to his disability.

18    Additionally, the door lacks a proper smooth uninterrupted surface on

19    the bottom of the push side, which interferes with Plaintiff using his

20    wheelchair footplates to push the door open.

21    f)    The jukebox device is not located on an accessible route of travel; it is

22    on a raised platform which would prevent Plaintiff from approaching it

23    in his wheelchair.

24    g)    The routes of travel through the interior and exterior public areas of the

25    Facility, including the route serving the lower portion of the bar counter,

26    the routes through the lounge area, and the routes through the exterior

27    dining area, do not provide sufficient clear width and are not maintained

28    free of obstructions. This would prevent Plaintiff from maneuvering his

wheelchair through the route, especially when the seats are filled with customers, and would prevent him from using the lowered portion of the bar counter.

h)      There is no properly configured accessible bar dining counter. The bar dining counter surface has a lower portion, but the surface of the lower portion is too high and insufficient knee and toe clearances are provided. Plaintiff requires a 60-inch-long accessible counter with proper knee and toe clearances and a height of 34 inches or less so that he can sit comfortably in his wheelchair and have a companion sit next to him.

i)      Insufficient accessible seating is provided. Presently, none of the tables in the interior or exterior dining areas are properly configured as accessible, as their surfaces are too high and/or they lack proper knee and toe clearances. Plaintiff requires a table with a surface 34 inches or less and proper knee and toe clearances so he can sit comfortably in his wheelchair. Such tables should be properly dispersed through the various seating areas and seating types offered at the Facility (e.g. indoor/outdoor).

j)      The gate serving the patio area is not accessible because it lacks a proper smooth uninterrupted surface on the bottom of the push side, which interferes with Plaintiff using his wheelchair footplates to push the gate open.

k)      Although a raised dining counter is provided in the lounge area, the surface is too high and no accessible portion is provided. Again, Plaintiff requires a 60-inch-long accessible counter with proper knee and toe clearances and a height of 34 inches or less so that he can sit comfortably in his wheelchair and have a companion sit next to him.

l)      There is insufficient clear space provided for a wheelchair in the lounge area, which would prevent Plaintiff from sitting in the lounge area in his

wheelchair as he would have difficulty maneuvering into the space and once seated there, his wheelchair would obstruct the path of other customers.

m)   No properly configured men's or unisex restroom is provided.

    a.   The men's restroom door lacks proper interior maneuvering clearances, closes too quickly, and lacks a proper smooth uninterrupted portion on the bottom of the push side, which all present barriers to Plaintiff as explained above.

    b.   The lavatory lacks proper knee and toe clearances and the plumbing beneath it is not properly insulated, which would make it difficult for Plaintiff to pull his wheelchair close enough to reach the faucet while putting his legs at risk of being burned.

    c.   The urinal is located within an alcove that lacks proper width, which would prevent Plaintiff from pulling his wheelchair into the alcove to use the urinal.

    d.   The route of travel to the wheelchair-accessible toilet compartment lacks sufficient clear width and is not maintained free of obstructions, which would make it difficult for Plaintiff to reach the wheelchair-accessible stall in his wheelchair.

    e.   The door to the wheelchair-accessible toilet compartment is not self-closing and lacks proper locking hardware, so it would be difficult for Plaintiff to close the door and keep it closed after entering in his wheelchair.

    f.   The toilet in the wheelchair-accessible toilet compartment is located too far from the side wall which would make it difficult for Plaintiff to use the side grab bar to transfer.

    g.   The flush control is not located on the open side of the toilet, so Plaintiff would have to reach around the toilet to flush which

1   would be difficult.

2   h.   The interior of the wheelchair-accessible toilet compartment

3       lacks sufficient maneuvering clearances at the toilet, which

4       would make it difficult for Plaintiff to position his wheelchair in

5       order to transfer to the toilet.

6   i.   The space above and below the grab bars in the wheelchair-

7       accessible toilet compartment is obstructed by the toilet tank lid

8       and toilet seat cover dispenser, which would make it difficult for

9       Plaintiff to grasp the grab bar to transfer.

10  j.   The operable part of the toilet seat cover dispenser in the

11      wheelchair-accessible toilet compartment is too high, which

12      would make it hard for Plaintiff to reach from a wheelchair-

13      seated position.

14  k.   The soap dispenser and hand dryer in the men's restroom are not

15      located on an accessible route and their operable parts are too

16      high, which would make them difficult for Plaintiff to use from a

17      wheelchair-seated position.

18      12.    Plaintiff was, and continues to be, deterred from visiting the Facility because

19  Plaintiff knows that the Facility's goods, services, facilities, privileges, advantages, and

20  accommodations were and are unavailable to Plaintiff due to Plaintiff's physical disabilities.

21  Plaintiff enjoys the goods and services offered at the Facility, and will return to the Facility

22  once the barriers are removed.

23      13.    Defendants knew, or should have known, that these elements and areas of the

24  Facility were inaccessible, violate state and federal law, and interfere with (or deny) access to

25  the physically disabled. Moreover, Defendants have the financial resources to remove these

26  barriers from the Facility (without much difficulty or expense), and make the Facility

27  accessible to the physically disabled. To date, however, Defendants refuse to either remove

28  those barriers or seek an unreasonable hardship exemption to excuse non-compliance.

14.     At all relevant times, Defendants have possessed and enjoyed sufficient control and authority to modify the Facility to remove impediments to wheelchair access and to comply with the 1991 ADA Accessibility Guidelines and/or the 2010 ADA Standards for Accessible Design. Defendants have not removed such impediments and have not modified the Facility to conform to accessibility standards. Defendants have intentionally maintained the Facility in its current condition and have intentionally refrained from altering the Facility so that it complies with the accessibility standards.

15.     Plaintiff further alleges that the (continued) presence of barriers at the Facility is so obvious as to establish Defendants' discriminatory intent. On information and belief, Plaintiff avers that evidence of this discriminatory intent includes Defendants' refusal to adhere to relevant building standards; disregard for the building plans and permits issued for the Facility; conscientious decision to maintain the architectural layout (as it currently exists) at the Facility; decision not to remove barriers from the Facility; and allowance that Defendants' property continues to exist in its non-compliant state. Plaintiff further alleges, on information and belief, that the Facility is not in the midst of a remodel, and that the barriers present at the Facility are not isolated or temporary interruptions in access due to maintenance or repairs.

## VI.     FIRST CLAIM

### Americans with Disabilities Act of 1990

Denial of "Full and Equal" Enjoyment and Use

16.     Plaintiff re-pleads and incorporates by reference the allegations contained in each of the foregoing paragraphs, and incorporates them herein as if separately re-pled.

17.     Title III of the ADA holds as a "general rule" that no individual shall be discriminated against on the basis of disability in the full and equal enjoyment (or use) of goods, services, facilities, privileges, and accommodations offered by any person who owns, operates, or leases a place of public accommodation. 42 U.S.C. § 12182(a).

18.     Defendants discriminated against Plaintiff by denying Plaintiff "full and equal enjoyment" and use of the goods, services, facilities, privileges and accommodations of the Facility during each visit and each incident of deterrence.

*Gilbert v. Bookies, Inc., et al.*
Second Amended Complaint

1

<u>Failure to Remove Architectural Barriers in an Existing Facility</u>

2

19.     The ADA specifically prohibits failing to remove architectural barriers, which

3

are structural in nature, in existing facilities where such removal is readily achievable. 42

4

U.S.C. § 12182(b)(2)(A)(iv).

5

20.     When an entity can demonstrate that removal of a barrier is not readily

6

achievable, a failure to make goods, services, facilities, or accommodations available through

7

alternative methods is also specifically prohibited if these methods are readily achievable. <u>Id</u>.

8

§ 12182(b)(2)(A)(v).

9

21.     Here, Plaintiff alleges that Defendants can easily remove the architectural

10

barriers at the Facility without much difficulty or expense, that the cost of removing the

11

architectural barriers does not exceed the benefits under the particular circumstances, and that

12

Defendants violated the ADA by failing to remove those barriers, when it was readily

13

achievable to do so.

14

22.     In the alternative, if it was not "readily achievable" for Defendants to remove

15

the Facility's barriers, then Defendants violated the ADA by failing to make the required

16

services available through alternative methods, which are readily achievable.

17

<u>Failure to Design and Construct an Accessible Facility</u>

18

23.     Plaintiff alleges on information and belief that the Facility was designed and

19

constructed (or both) after January 26, 1993 – independently triggering access requirements

20

under Title III of the ADA.

21

24.     The ADA also prohibits designing and constructing facilities for first occupancy

22

after January 26, 1993, that aren't readily accessible to, and usable by, individuals with

23

disabilities when it was structurally practicable to do so. 42 U.S.C. § 12183(a)(1).

24

25.     Here, Defendants violated the ADA by designing and constructing (or both) the

25

Facility in a manner that was not readily accessible to the physically disabled public –

26

including Plaintiff – when it was structurally practical to do so.[1]

27

28

---

[1] Nothing within this Complaint should be construed as an allegation that Plaintiff is bringing this action as a private attorney general under either state or federal statutes.

*Gilbert v. Bookies, Inc., et al.*
Second Amended Complaint

<u>Failure to Make an Altered Facility Accessible</u>

26.   Plaintiff alleges on information and belief that the Facility was modified after January 26, 1993, independently triggering access requirements under the ADA.

27.   The ADA also requires that facilities altered in a manner that affects (or could affect) its usability must be made readily accessible to individuals with disabilities to the maximum extent feasible. 42 U.S.C. § 12183(a)(2). Altering an area that contains a facility's primary function also requires making the paths of travel, bathrooms, telephones, and drinking fountains serving that area accessible to the maximum extent feasible. <u>Id</u>.

28.   Here, Defendants altered the Facility in a manner that violated the ADA and was not readily accessible to the physically disabled public – including Plaintiff – to the maximum extent feasible.

<u>Failure to Modify Existing Policies and Procedures</u>

29.   The ADA also requires reasonable modifications in policies, practices, or procedures, when necessary to afford such goods, services, facilities, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter their nature. 42 U.S.C. § 12182(b)(2)(A)(ii).

30.   Here, Defendants violated the ADA by failing to make reasonable modifications in policies, practices, or procedures at the Facility, when these modifications were necessary to afford (and would not fundamentally alter the nature of) these goods, services, facilities, or accommodations.

<u>Failure to Maintain Accessible Features</u>

31.   Defendants additionally violated the ADA by failing to maintain in operable working condition those features of the Facility that are required to be readily accessible to and usable by persons with disabilities.

32.   Such failure by Defendants to maintain the Facility in an accessible condition was not an isolated or temporary interruption in service or access due to maintenance or repairs.

33.   Plaintiff seeks all relief available under the ADA (i.e., injunctive relief, attorney

fees, costs, legal expense) for these aforementioned violations. 42 U.S.C. § 12205.

## VII.   SECOND CLAIM

### Unruh Act

34.    Plaintiff re-pleads and incorporates by reference the allegations contained in each of the foregoing paragraphs, and incorporates them herein as if separately re-pled.

35.    California Civil Code § 51 states, in part, that: All persons within the jurisdiction of this state are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever.

36.    California Civil Code § 51.5 also states, in part that: No business establishment of any kind whatsoever shall discriminate against any person in this state because of the disability of the person.

37.    California Civil Code § 51(f) specifically incorporates (by reference) an individual's rights under the ADA into the Unruh Act.

38.    Defendants' aforementioned acts and omissions denied the physically disabled public – including Plaintiff – full and equal accommodations, advantages, facilities, privileges and services in a business establishment (because of their physical disability).

39.    These acts and omissions (including the ones that violate the ADA) denied, aided or incited a denial, or discriminated against Plaintiff by violating the Unruh Act.

40.    Plaintiff was damaged by Defendants' wrongful conduct, and seeks statutory minimum damages of $4,000 for each offense.

41.    Plaintiff also seeks to enjoin Defendants from violating the Unruh Act (and ADA), and recover reasonable attorneys' fees and costs incurred under California Civil Code § 52(a).

## VIII. THIRD CLAIM

### Denial of Full and Equal Access to Public Facilities

42.    Plaintiff re-pleads and incorporates by reference the allegations contained in each of the foregoing paragraphs, and incorporates them herein as if separately re-pled.

43.    Health and Safety Code § 19955(a) states, in part, that: California public

accommodations or facilities (built with private funds) shall adhere to the provisions of Government Code § 4450.

44.   Health and Safety Code § 19959 states, in part, that: Every existing (non-exempt) public accommodation constructed prior to July 1, 1970, which is altered or structurally repaired, is required to comply with this chapter.

45.   Plaintiff alleges the Facility is a public accommodation constructed, altered, or repaired in a manner that violates Part 5.5 of the Health and Safety Code or Government Code § 4450 (or both), and that the Facility was not exempt under Health and Safety Code § 19956.

46.   Defendants' non-compliance with these requirements at the Facility aggrieved (or potentially aggrieved) Plaintiff and other persons with physical disabilities. Accordingly, Plaintiff seeks injunctive relief and attorney fees pursuant to Health and Safety Code § 19953.

## IX.   PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays judgment against Defendants, and each of them, for:

1.   Injunctive relief, preventive relief, or any other relief the Court deems proper.

2.   Statutory minimum damages under section 52(a) of the California Civil Code according to proof.

3.   Declaratory relief finding that Defendants violated the ADA.

4.   Attorneys' fees, litigation expenses, and costs of suit.[2]

5.   Interest at the legal rate from the date of the filing of this action.

6.   For such other and further relief as the Court deems proper.

Dated: May 18, 2023                          MOORE LAW FIRM, P.C.


                                             /s/ Tanya E. Moore
                                             Tanya E. Moore
                                             Attorney for Plaintiff
                                             Darren Gilbert

---

[2] This includes attorneys' fees under California Code of Civil Procedure § 1021.5.

*Gilbert v. Bookies, Inc., et al.*
Second Amended Complaint

**VERIFICATION**


I, DARREN GILBERT, am the plaintiff in the above-entitled action. I have read the foregoing Second Amended Complaint and know the contents thereof. The same is true of my own knowledge, except as to those matters which are therein alleged on information and belief, and as to those matters, I believe them to be true.

I verify under penalty of perjury that the foregoing is true and correct.



Dated:   May 18, 2023              _____ */s/ Darren Gilbert* _____
                                    Darren Gilbert


I attest that the original signature of the person whose electronic signature is shown above is maintained by me, and that his concurrence in the filing of this document and attribution of his signature was obtained.

                                    _____ */s/ Tanya E. Moore* _____
                                    Tanya E. Moore
                                    Attorney for Plaintiff,
                                    DARREN GILBERT